UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WAYNE FLOURNOY, | No. 2:16-cv-03024 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born November 18, 1971, applied on June 26, 2012 for SSI, alleging disability beginning that date. Administrative Transcript ("AT") 109, 336. Plaintiff alleged he was unable to work due to depression, anxiety, anti-social behavior, hepatitis C, and arthritis. AT 110. Plaintiff subsequently amended his alleged onset date to February 1, 2013. AT 14, 482. In a

1

decision dated October 26, 2015, the ALJ determined that plaintiff was not disabled.[1] AT 13-38. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since February 1, 2013, the amended alleged onset date.
>
> 2. The claimant has the following severe impairments: bilateral carpal tunnel syndrome, degenerative joint disease of the shoulders and cervical spine, alcohol dependence, affective disorder, and generalized anxiety disorder.
>
> 3. The claimant's impairments, including alcohol dependence, meets the criteria of section 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. If the claimant stopped his alcohol abuse, the remaining

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

5. If the claimant stopped his alcohol abuse, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

6. If the claimant stopped his alcohol use, the claimant would have the residual functional capacity to perform light work with the following limitations: could lift and carry 25 pounds occasionally and 10 pounds frequently; could stand and walk for 6 hours of an 8-hour day and sit for at least 6 hours in an 8-hour day; could perform frequent handling, fingering, and feeling; would be capable of completing simple, repetitive tasks; and is capable of occasional public contact.

7. If the claimant stopped his alcohol use, the claimant would be unable to perform past relevant work.

8. The claimant was born on November 18, 1971 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

9. The claimant has at least a high-school education and is able to communicate in English.

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

11. If the claimant stopped the substance abuse, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

12. The alcohol use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the alcohol use. Because the claimant's alcohol use is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act, since June 26, 2012, the date the application was filed.

AT 17-38.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the medical opinion evidence; and (2) the ALJ erred by

3

1 | relying on the grids to deny benefits.

2 | LEGAL STANDARDS

3 |     The court reviews the Commissioner's decision to determine whether (1) it is based on
4 | proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record
5 | as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial
6 | evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340
7 | F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable
8 | mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th
9 | Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is
10 | responsible for determining credibility, resolving conflicts in medical testimony, and resolving
11 | ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).
12 | "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one
13 | rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14 |     The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
15 | Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
16 | conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
17 | affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
18 | also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
19 | administrative findings, or if there is conflicting evidence supporting a finding of either disability
20 | or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
21 | 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
22 | weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

23 | ANALYSIS

24 |     A. Medical Opinions

25 |     Plaintiff argues that the ALJ failed to credit multiple medical sources that, if properly
26 | credited, would have resulted in a finding of disability. Defendant counters that the ALJ was
27 | tasked with resolving conflicting medical opinions and reached a middle ground in determining
28 | plaintiff's RFC, supported by substantial evidence.

Plaintiff focuses on the following medical opinions: testifying medical expert Dr. Harvey Alpern; consultative examiner Dr. Sidney Cormier; treating physicians at Shasta Community Health Center; and a treating therapist at the Cedar Rose Program. The court reviews these opinions in turn.

Dr. Alpern testified at the September 1, 2015 hearing based on a "a review of the records made available to him prior to the hearing," but not the "hundreds of additional medical records" submitted post-hearing. AT 24; AT 49, 54-60. Dr. Alpern found that plaintiff had the following conditions: seizures, withdrawals, and headaches due to a history of alcoholism; stage 1 hepatitis C; jaw injury with pain; cervical degenerative disc disease, moderate; and bilateral carpal tunnel with pain in both upper extremities and difficulty in grasp and handling. AT 56. Dr. Alpern concluded that plaintiff met Listing 1.02B as of 2013, citing an EMG finding that year. AT 56-57; see AT 869-874 (February 2013 EMG finding moderate bilateral carpal tunnel syndrome, cervical neuritis on the left, and cervical radiculopathy).

The ALJ assigned little weight to a portion of Dr. Alpern's opinion, citing several reasons. AT 24. Among these were the fact that 2014 and 2015 records not reviewed by Dr. Alpern "show very minimal complaints of carpal tunnel and upper extremity pain and again only very conservative treatment." AT 24; see, e.g., AT 1189, 1213 (2015 exams find normal strength and sensation in upper extremities). These latter records led the ALJ to conclude that plaintiff's upper extremity symptoms improved enough for the claimant to "repeatedly fail to mention or complain about" them. AT 25. The ALJ found these records inconsistent with the opinion that plaintiff met or equaled Listing 1.02B. AT 25. She also cited plaintiff's daily activities as inconsistent with the finding that plaintiff met Listing 1.02B. AT 25[2]; see, e.g., AT 1138 (2015 report that plaintiff could shower, dress, do occasional shopping, prepare simple meals, do basic chores, and pay bills). While the ALJ gave "significant weight" to Dr. Alpern's finding that plaintiff had

---

[2] "The undersigned notes that the claimant's ability to write letters to his wife in prison, panhandle for money, drive a car while intoxicated, smoke on a daily basis, climb ladders, go shopping, live alone outdoors in homeless camps, prepare his own meals, and complete basic chores reflects functional abilities and limitations that do not meet or equal listing 1.02(B)." AT 25.

5

limitations in handling, fingering, and feeling because these findings were consistent with the opinion of State agency medical consultant Dr. Legarda, she found that plaintiff did not meet Listing 1.02B, finding that "there is no persuasive opinion or other evidence suggesting" that plaintiff's impairments met or equal a listing. AT 24.

Dr. Cormier performed a consultative examination of plaintiff on June 8, 2015, and the ALJ summarized his findings in detail. AT 22-23; see AT 1135-1144. Dr. Cormier opined that plaintiff's "ability to complete a typical workday or workweek without interruptions . . . appears seriously impaired at this time," citing plaintiff's bipolar disorder and probable borderline cognitive functioning. AT 1141. Dr. Cormier concluded that plaintiff "was probably capable of adjusting to routine changes on the job site," and that plaintiff was "currently performing all activities of daily living" and appeared "marginally functional outside of a moderately supported situation at this time." AT 1142.

After summarizing Dr. Cormier's report, the ALJ wrote:

> The undersigned assigns significant weight to Dr. Cormier's limitations during period when the claimant is alcohol dependent. Dr. Cormier's limitations are consistent with the claimant's presentation to medical appointments while inebriated characterized by slurred speech, an inability to focus, and inappropriate behaviors. Moreover, Dr. Cormier's limitations account for plaintiff's subjective complaints. However, lesser weight is assigned to Dr. Cormier's limitations during periods of sobriety, where the claimant has demonstrated greater mental functioning than suggested by Dr. Cormier's opinion.

AT 23.[3]

---

[3] In 1996, Congress amended 42 U.S.C. § 423 to eliminate drug and alcohol abuse as bases for finding disability. See Contract With America Advancement Act of 1996 § 105, 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.") The ALJ herein followed the appropriate analysis for determining whether alcoholism or drug abuse is a contributing factor material to the determination of disability, as set forth in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001); see also, 42 U.S.C. S 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ first determined, pursuant to the Commissioner's five-step inquiry, whether plaintiff is disabled when the impact of substance abuse is considered. Only after finding plaintiff disabled did the ALJ determine whether the applicant would still be disabled if he stopped using drugs or alcohol.

Ample record evidence showed that alcohol use impaired plaintiff's social functioning and cognitive abilities, see e.g., AT 1386 (plaintiff "rambling . . ., crying and intoxicated), AT 1396 (plaintiff "appears to be intoxicated . . . and was not able to remove himself from his seat to make it into the exam room"), AT 1466-67 (plaintiff refusing detox program, "slurring words, unable to focus"). Other medical evidence showed that when sober, plaintiff's speech, thought content, memory, and affect were normal. AT 653, 1213, 1354, 1424. The ALJ gave significant weight to the findings of Dr. Nitan Bagul, who assessed plaintiff three times in 2013 during a period when plaintiff was reportedly sober and taking prescribed psychotropic medications. AT 33; see, e.g., AT 1401-1403. Dr. Bagul assessed plaintiff's GAF scores at 55 through 60.[4] AT 33; see AT 654, 657, 672. The ALJ found that these GAF scores were consistent with plaintiff's activities of daily living. AT 33.

Plaintiff also challenges the ALJ's weighing of two medical forms filled out by physicians at the Shasta Community Health Center. AT 20; see AT 1326-28. In November 2013, Dr. Herbert Monie "completed a form indicating that the claimant had a physical or mental incapacity that temporarily prevented or substantially reduced the claimant's ability to engage in work or training," the ALJ wrote. AT 20; see AT 1327. Dr. Monie listed plaintiff's limitations and/or work restrictions as muscle pain, anxiety, depression, and poor memory and found that he would be able to return to work on May 20, 2014. AT 20, 1327. The ALJ gave Dr. Monie's report "significant weight" as to mental impairments "because this was based on a treating relationship and consistent with the claimant's subjective allegations. However, during periods of sobriety and when the claimant was not alcohol dependent, Dr. Monie's opinion is assigned little weight." AT 20. The ALJ ultimately concluded that, if plaintiff stopped drinking, he was capable of performing light work with certain limitations as set forth in the RFC.

////

---

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

The ALJ also reviewed a May 2013 form filled out by treating physician Dr. Bagul, mentioned above, who evaluated plaintiff multiple times in 2013. AT 1401-1405. On May 10, 2013, Dr. Bagul gave plaintiff a GAF score of 60 and noted that plaintiff was "oriented to person, place and time, had an intact memory, but an anxious mood. [His] attitude was cooperative, and his impulse control, judgment, and insight were fair" on that day, the ALJ noted. AT 20; see AT 1401-1405. "Despite Dr. Bagul's treatment notes reflecting only moderate mental limitations on May 10, 2013, . . . Dr. Bagul also completed a form in support of the claimant receiving General Assistance benefits on the same day." AT 22; see AT 1328. The form stated that plaintiff had a physical or mental incapacity that prevented or substantially reduced his ability to engage in full-time work, which an expected recovery date of November 5, 2013. AT 1328. As with Dr. Monie's opinion, the ALJ assigned this work limitation significant weight "during instances when the claimant is dependent on alcohol" but gave it limited weight for periods when plaintiff was sober, in part because "Dr. Bagul's own treatment notes of the claimant while he was sober show greater mental functioning." AT 22.

Lastly, plaintiff takes issue with the ALJ's weighing of an undated one-page letter by Jeanette Mitchell, M.A., a medical assistant at Cedar Rose Programs in Redding, California. AT 1157; see AT 50. Ms. Mitchell wrote that plaintiff had been attending weekly counseling sessions since May 27, 2015, had been diagnosed with Generalized Anxiety Disorder, and had been able to maintain sobriety since his May 19, 2015 arrest. AT 1157. She opined that his disability would "last longer than one year." AT 1157. The ALJ assigned little weight to this opinion because "a medical assistant is not an acceptable medical source and this opinion touches upon a subject matter reserved for the Commissioner. Moreover, the medical assistant did not provide a function-by-function analysis." AT 23. Plaintiff concedes that Ms. Mitchell was not an "acceptable medical course" within the meaning of the regulations, but argues that her opinion as an "other medical source" should have been given more weight.[5] (ECF No. 15 at 22.)

////

---

[5] No specific guidelines exist for weighing opinions from "other sources." Opinions from "other sources" are given less weight than opinions from "acceptable medical sources."

8

In arguing that the ALJ should have weighted the above opinions differently, much of plaintiff's argument amounts to a different interpretation of the medical evidence than the ALJ's. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). Here, along with the opinions of Dr. Alpern, Dr. Cormier, Dr. Bagul, and Dr. Monie, the ALJ also considered the opinions of State agency physician Dr. Maria Legarda, whose physical RFC assessment was given "significant weight" by the ALJ "because it was based on a thorough review of the claimant's records and her opinion is consistent with the claimant's activities of daily living." AT 30; see AT 119-120. The ALJ "add[ed] to Dr. Legarda's opinion the additional limitation of frequent fingering to account for the claimant's carpal tunnel syndrome and symptoms related to some of his fingers." AT 30.

Additionally, "[a]s directed by the Appeals Council, the [ALJ] specifically took into account treatment notes from Dr. Matthew Merliss dated April 25, 2013."[6] AT 31; see AT 1123-24. "Dr. Merliss's treatment notes are consistent with the finding that the claimant is able to perform light work and frequent handlings, fingering, and feeling," the ALJ concluded. AT 31; see AT 1124-1123. The ALJ noted evidence that plaintiff had not been "entirely compliant in taking prescribed medications," but that the record indicated that "treatment has been generally successful in controlling [his] symptoms and conservative in nature." AT 35; see, e.g., AT 522, 655, 1257, 1401 (showing mental health improved by psychotropic medications). The undersigned concludes that the ALJ's interpretation of voluminous medical evidence "susceptible to more than one rational interpretation" was supported by substantial evidence.

B. Use of Grids

Plaintiff asserts that the ALJ improperly relied on the Grids in her Step 5 decision, because "no SSR or other Agency authority addresses the precise combination of exertional and nonexertional limitations in this case." (ECF No. 15 at 26.) Plaintiff's RFC limited him to

---

[6] The ALJ explained at the hearing that the Appeals Council remanded her first decision on plaintiff's claim with instructions to further evaluate plaintiff's mental impairment, provide an alcohol abuse evaluation, address physical limitations in plaintiff's RFC, and consider Dr. Merliss's opinion. AT 51-52; see AT 161-163.

9

simple, repetitive tasks; occasional public contact; and frequent handling, fingering, and feeling. Plaintiff argues that the ALJ should have obtained vocational expert ("VE") testimony on the impact of these combined limitations on plaintiff's ability to perform available jobs.

The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers v. Sec'y of Health and Human Servs., , 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities. Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

"The ALJ can use the [G]rids without vocational expert testimony when a non-exertional limitation is alleged because the [G]rids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the [G]rids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations and quotation marks omitted). In such instances, the testimony of a vocational expert is required.

////

As to plaintiff's first two limitations – simple, repetitive tasks and occasional public contact – the Ninth Circuit has held that a plaintiff's restriction to "nonpublic, simple, repetitive work" does not require the use of VE evidence. <u>Angulo v. Colvin</u>, 577 F. App'x 686, 687 (9th Cir. 2014) (unpublished); see <u>Rosalia v. Colvin</u>, No. 2:15-cv-0184 CKD, 2016 WL 29597, *6 (E.D. Cal. Jan. 4, 2016) (citing same). Nor did plaintiff's RFC limitation to frequent handling, fingering, and feeling require the use of a VE. See <u>Avila v. Colvin</u>, No. 2:15-cv-0461 CKD, 2016 WL 659811, *3 (E.D. Cal. Feb. 18, 2016) (plaintiff's limitations to frequent handling, fingering, and feeling in bilateral extremities were not sufficiently severe to require VE testimony). In fact, <u>Avila</u> involved sedentary work, which requires more manipulative activity than the light work in the instant case. See SSR 83-10 (most unskilled sedentary jobs "require good use of the hands and fingers for repetitive hand-finger actions," whereas unskilled light jobs "generally do not require the use of fingers for fine activities to the extent required in much sedentary work"). The court finds no error in the ALJ's reliance on the grids.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3. Judgment is entered for the Commissioner.

Dated: February 5, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11